UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

QUINCIE RANKIN, individually and on
behalf of others similarly situated;

    Plaintiff,

vs.                                                                         Case No. 02-CV-71045

DAVID P. ROTS, et al.,                                         HON. AVERN COHN

    Defendants.

_____/

**MEMORANDUM AND ORDER GRANTING PLAINTIFF'S MOTION FOR FINAL
APPROVAL OF PROPOSED SETTLEMENT, AMENDMENT TO PLAN ALLOCATION
AND FINAL CERTIFICATION OF THE CLASS
AND
FINAL JUDGMENT**

I.

This is a case under the Employment Retirement Income Security Act ("ERISA"), 29 U.S.C. § 1001 et seq. claiming breach of fiduciary duty which has as its genesis the collapse of Kmart Corporation into bankruptcy. On March 18, 2002, plaintiff Quince Rankin filed a complaint seeking recovery on behalf of herself and other similarly situated Kmart employees who invested in Kmart stock through participation in Kmart's 401(K) plan under which Kmart matched voluntary participant contributions with investments in Kmart stock. Plaintiff named as defendants various officers and directors of Kmart which she claimed to be fiduciaries within the meaning of ERISA and have breached their fiduciary duties with respect to the administration of the 401(K) plan

essentially by continuing to invest in Kmart stock at a time when Kmart was in serious decline and which resulted in significant losses to the Plan.

Before the Court is plaintiff's Motion for Final Approval of the Settlement, to Amend the Plan of Allocation and for Final Certification of the Class. For the reasons that follow, the motion is GRANTED. This Order serves as the final Order and Judgment in this case.

## II.

### A.

There are two Kmart retirement savings plans at issue. Kmart Retirement Savings Plan A and Kmart Retirement Savings Plan B (collectively, the Plan). The plans are virtually identical.

The Plan is both defined contribution plan and an eligible individual account plan. The Plan maintains an individual account for each participant and provides benefits based solely on the amount contributed. There are two sources for contributions: voluntary contributions by participants and matching contributions by Kmart. The matching or employer contributions are part of an Employee Stock Ownership Plan (an "ESOP") which under ERISA allows the matching contributions to be invested in the company's stock and limits a participant's ability to transfer contributions to other investments. From March 15, 1999 to January 25, 2002, the Plan provided that the ESOP assets at all times shall be invested primarily in [Kmart] stock. See Art. 14.1.[1] The Plan also provides that a participant's employer contributions must be in Kmart

---

[1] After January 25, 2002, when Kmart filed for bankruptcy, the Plan was amended to provide that the matching contributions would no longer be made in Kmart stock.

stock until the participant reaches age 55 and had been a participant for five full years. After January 1, 1999, a participant age 55 who had been a participant for five years could elect to have future employer contributions invested in any of the investment funds by making a proper election with Kmart. During that time, the Plan held significant amounts of its assets in Kmart stock.

B.

On March 18, 2002, plaintiff filed the complaint against defendants claiming breach of fiduciary duty under ERISA. The breach of fiduciary duty claims can be broadly divided into two categories: (1) that the defendants breached their duty of prudence by continuing to retain and invest in Kmart stock and (2) that the defendants breached their duty to disclose by making material misrepresentations about the strength of Kmart and the propriety of investing in Kmart stock.

Defendants then filed motions to dismiss. On August 20, 2003, the Court entered an order denying defendants' motions to dismiss. Rankin v. Rots, 278 F. Supp. 2d 853 (E.D. Mich. 2003).

On April 16, 2004, the Court conditionally certified the case as a class action under Rule 23(b)(1)(A) and (B). Rankin v. Rots, 220 F.R.D. 511 (E.D. Mich. 2004). The Court left open the class definition. At that point, the parties engaged in discovery and settlement negotiations.

On November 16, 2005, the parties entered into a Settlement Agreement. On February 9, 2006, the Court entered an Order Preliminarily Approving Settlement, Certifying Class for Purposes of Settlement, Approving Form and Manner of Notice and Scheduling Hearing on Fairness of the Settlement Agreement Pursuant to Fed. R. Civ.

P. 23(e). The terms of the Settlement Agreement are incorporated by reference.

On June 26, 2006, the Court held a hearing on the instant motion for approval of the settlement for which members of the class, defined below, had been given notice and an opportunity to be heard.

III.

A.

As noted above, the Court left open the class definition. Per the settlement agreement, the Court approves the maintenance of this case as a class action under Fed. R. Civ. P. 23(a) and 23(b)(1) and (b)(2). The class consists of the following individuals:

> All participant and beneficiaries of the Kmart Retrement Savings Plan A (now known as the :Kmart Retirement dsavings Plan") and Kmart Retirement Savings Plan B (now knowns as the "Kmart Retirement Savings Plan for Manteno Distribution Center Union Employees") and any of their predecessor plans, from March 15, 1999 to May 6, 2003, inclusive (the "Class Period"), and who purchased sold, or held any unites in the Kmart Stock Fund during the Class Period, excluding the defendant to the Litigation and members of their families.

The Court finds that (a) the joinder of all members is impracticable; (b) there are questions of law and fact common to the class; (c) the claims raised by plaintiff are typical of the claims of the class; (d) plaintiff has fairly and adequately represented the interests of the class; and (e) the prosecution of separate actions by individual members of the class would create a risk of (i) inconsistent or varying adjudications with respect to individual members of the class that would establish incompatible standards of conduct for all named defendants; (ii) adjudications with respect to individual members of the class which would as a practical matter be dispositive of the interests of the other members of the class; and (f) plaintiff has alleged that the named defendants have

acted or refused to act on grounds generally applicable to the class. The Court further finds that Rankin has adequately represented the class and is hereby approved as Class Representative.

The certification of the class is without prejudice to the Kmart Officers and Directors' right to oppose class certification in the litigation if this Order and Judgment and Order does not become effective as provided in the Settlement Agreement.

B.

The settlement provides an immediate economic benefit to the class in the form of an $11.75 million cash payment, plus an additional $200,000 for administrative expenses. The Amended Plan of Allocation, filed June 23, 2006, sets forth specific calculations as to a Participant's share, or "compensable unit."

IV.

A.

Fed. R. Civ. P. 23(e)(1)(C) provides that "the court may approve a settlement ... that would bind class members only after a hearing and on finding that the settlement ... is fair, reasonable, and adequate."

In assessing the fairness, reasonableness, and adequacy of a proposed settlement, the Court should "compare the terms of the compromise with the likely rewards of litigation." Protective Committee for Independent Stockholders of TMT Trailer Ferry, Inc. v. Anderson, 390 U.S. 414, 425 (1968), reh'g. denied, 391 U.S. 909  This comparison requires consideration of two main elements. First, although the Court need not, and should not, decide the merits of the controversy, it should consider the existence of serious questions of law and fact which place the ultimate outcome of the

litigation in doubt. See Florida Trailer and Equipment Company v. Deal, 284 F.2d 567, 571 (5th Cir. 1960). Second, the Court should consider the vagaries of litigation and compare the significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation. The Court should also consider the judgment of counsel and the presence of good faith bargaining between the contending parties. The Court will not substitute its business judgment for that of the parties; 'the only question . . . is whether the settlement, taken as a whole, is so unfair on its face as to preclude judicial approval.' " Zerkle v. Cleveland-Cliffs Iron Co., 52 F.R.D. 151, 159 (S.D.N.Y.1971).

The Court's determination also requires consideration of "whether the interests of the class as a whole are better served if the litigation is resolved by the settlement rather than pursued." Manual for Complex Litigation (Third) § 30.42 at 238 (1995). Relevant factors considered by the Court include: (a) the likelihood of success on the merits weighed against the amount and form of the relief offered in the settlement; (b) the risks, expense, and delay of further litigation; (c) the judgment of experienced counsel who have competently evaluated the strength of their proofs; (d) the amount of discovery completed and the character of the evidence uncovered; (e) whether the settlement is fair to the unnamed class members; (f) objections raised by class members; (g) whether the settlement is the product of arm's length negotiations as opposed to collusive bargaining; and (h) whether the settlement is consistent with the public interest. See Granada Invs., Inc. v. DWG Corp., 962 F.2d 1203, 1205 (6th Cir.1992); Williams v. Vukovich, 720 F.2d 909, 922-23 (6th Cir. 1983); Kogan v. AIMCO

Fox Chase, L.P., 193 F.R.D. 496, 501-02 (E.D. Mich. 2000); Steiner v. Fruehauf Corp., 121 F.R.D. 304, 305-06 (E.D. Mich.1988).

B.

In light of the foregoing, the Court finds that the settlement amount and terms are fair, reasonable, and adequate.  This was a complex ERISA case.  This case alleges breach of fiduciary duty in regard to holdings in alleged risky company stock in individual retirement accounts.  Although this case is not unique in that there have been several similar ERISA cases filed across the country, as plaintiff points out, there have been very few, if any, which have reached the stage of a decision on the merits.  Although plaintiffs survived a motion to dismiss by defendants, whether they would prevail on the merits of their breach of fiduciary duty claims is far from clear.  As such, the decision to settle with a guarantee of monetary recovery was sound.  The settlement amount is reasonable when compared to the range of possible outcomes. As explained in plaintiffs' papers, the settlement provides the class with a recovery of between 18 and 46 percent of the claimed damages, depending upon how and when damages are measured.  Within the particular circumstances of this factually and legally complex ERISA class action lawsuit, the amount and form of relief is fair, adequate, and reasonable.

In order to further evaluate the reasonableness of the settlement, the Court on November 29, 2005 appointed Professor Theodore St. Antoine as an Independent Fiduciary to review the terms of the settlement and advise the Court as to whether it is fair, reasonable, and adequate.  In reports dated February 2, 2006 and February 3,

2006, the Independent Fiduciary concluded that the settlement was fair and reasonable under the circumstances.

The Court will briefly comment on the objections raised by class members. According to plaintiff's papers, there are over 100,000 class members. Out of this number, only four participants filed documents with the Court, two of which can be construed as objections. The class reaction can be described as overwhelmingly supportive. The thrust of the two objections is that the class does no receive enough money form the settlement. At best, the objections are conclusory allegations. Importantly, there is no suggestion that the settlement is the result of any collusion between the plaintiff and defendants or that plaintiff is an inadequate class representative or that plaintiff's counsel is inadequate. The objections are therefore no impediment to approval of the settlement.

Overall, the Court is satisfied that the Settlement Agreement be approved.

V.

Accordingly, it is ORDERED AND ADJUDGED that:

The Court has jurisdiction over the subject matter of this litigation and over all parties to this litigation and Setltement Agreement, inlcuing the Plans and all members of the class.

The Settlement Agreement has been negotiated vigorously, in good faith, and at arm's-length by the plaintiff and her counsel on behalf of the Plans and the class members and that plaintiff has acted independently and that her interests are identical to the interests of the Plans and the class members.

The Settlement Agreement complies with the terms of the Department of Labor's Class Exemption for the Release of Claims and Extensions of Credit in Connection with Litigation, PTE 2003-39, does not constitute a "prohibited transaction" as defined in ERISA §§ 406(a) or (b), and is supported by a determination from the Independent Fiduciary that the Settlement Agreement is authorized by, as is appropriate for, the Plans.  The Settlement Agreement complies with Internal Revenue Service Revenue Ruling 2002-45, 2002-2 C.B. 116 (June 26, 2002).

The Class Notice and Publication Notice transmitted to the Settlement Class Members pursuant to the Preliminary Approval Order and the Settlement Agreement constituted the best notice practicable under the circumstances and provided individual notice to all members of the Class who could be identified through reasonable efforts. The Class Notice and Publication Notice provide valid, adequate, and sufficient notice of, among other things, these proceedings, the Settlement, the Released Claims, and the Plan of Allocation to all persons entitled to such notice.  Such notice has fully satisfied the requirements of Fed. R. Civ. P. 23 and the requirements of due process.

The case against the named defendants is DISMISSED WITH PREJUDICE on the merits, and the Released Claims are released and discharged as of the Effective Date of this Final Order and Judgment, without costs to any party.

The plaintiff, the Plans, and all members of the class are enjoined and barred from commencing or prosecuting any action that purports to challenge the Plan of Allocation (or amounts distributed thereunder) or that asserts any of the Released Claims against any of the Released Parties, either directly, representatively,

derivatively, or in any other capacity, whether by a complaint, counterclaim, or otherwise, in any local, state, or federal court, or in any agency or other authority or forum wherever located.  Any person or entity who knowingly violates this injunction may be required to pay the costs and attorneys' fees incurred by the named defendants or other Released Party as a result of the violation.

The Settlement Agreement, the Preliminary Approval Order, this final Order and Judgment, all drafts of the foregoing, and any negotiations or proceedings relating to the foregoing shall not be construed as or deemed to be evidence of an admission, concession, or of any liability or wrongdoing by any Kmart Officer and Director, and shall not be offered or received in evidence, or subject to discovery, in this or any other action or proceeding except to enforce the terms of the Settlement Agreement or except as may be required by law or court order.  This final Order and Judgment is not a finding of the validity or invalidity of any of the claims asserted or defenses raised in this Litigation.

Disbursements for payment of (a) the Independent Fiduciary, (b) postage or printing costs incurred for providing Class Notice and Publication Notice, and (c) the Distributable Settlement Payment are hereby approved.

Without affecting the finality of this final Order and Judgment, the Court retains jurisdiction to implement, interpret, or enforce this final Order and Judgment, the Preliminary Approval Order, and the Settlement Agreement.

In the event that (i) the Settlement Agreement is terminated pursuant to its terms, (ii) the Settlement Agreement, Preliminary Approval Order, and Order and Judgment and Order do not for any reason become effective, or (iii) the Settlement Agreement,

Preliminary Approval Order, or final Order and Judgment are reversed, vacated, or modified in any material respect, then any and all orders entered pursuant to the Settlement Agreement, including this final Order and Judgment, shall be deemed vacated.

Dated: June 27, 2006    s/Avern Cohn
AVERN COHN
UNITED STATES DISTRICT JUDGE

I hereby certify that a copy of the foregoing document was mailed to counsel of record on this date, June 27, 2006, by electronic and/or ordinary mail.

s/Julie Owens
Case Manager
(313) 234-5160